**R. S. ALLDAY SUPPLY CO. v. BLACKWELL et al.**

No. 6080.

Court of Appeal of Louisiana. Second Circuit.

May 3, 1940.

Rehearing Denied June 10, 1940.

Clifford E. Hays, of Minden, for appellant.

Campbell & Campbell, of Minden, for appellee.

HAMITER, Judge.

The destructive and disastrous tornado that visited the town of Rodessa, Louisiana, on the night of February 17, 1938, left in its wake numerous fatally injured persons, including George B. Blackwell and his wife, Mrs. Evelyn Beck Blackwell. Death resulted to both of the named parties a few hours later.

The R. S. Allday Supply Company of Atlanta, Texas, a co-partnership engaged in the undertaking business, had charge of the

preparation and interment of both bodies; and in this suit it seeks recovery for the unpaid equipment furnished and services rendered in connection therewith. It alleges that the funeral expenses of the husband were $264.50 and those of the wife $277.50. Impleaded as defendants are Lewis Blackwell and Mrs. Mattie Morgan Blackwell, the father and mother respectively, of decedent George B. Blackwell.

Plaintiff, in the district court, was granted judgment against the said Lewis Blackwell for $542, being the aggregate expenses of both funerals. The latter appealed.

The demands asserted against Mrs. Mattie Morgan Blackwell were rejected. They are not before us for review, by reason of a failure on the part of plaintiff to take appropriate proceedings.

The evidence discloses that a short interval of time separated the deaths of George B. Blackwell and his wife, Mrs. Evelyn Beck Blackwell. The latter, however, died first. Their bodies were carried to Atlanta, Texas, located approximately 16 miles from the stricken town.

The morning after the tornado, or on February 18, 1938, relatives of the decedents arrived at plaintiff's funeral home where decedents then lay. Included among these were the husband's father, who is appellant herein, and the wife's mother, Mrs. Ethel Beck. At the suggestion of a member of that group, Mr. R. S. Allday, a partner of the plaintiff concern, telephoned to the McCook Brothers Funeral Home, Inc., of Shreveport, and learned that there were in force and effect two burial insurance policies affecting the deceased persons that were issued by the Gibraltar Life Insurance Company, an organization controlled and supervised by the last named funeral company. Each policy, according to the informant, provided for a burial valued at $250 if McCook Brothers furnished the services; otherwise, it possessed a cash value of $125.

The parties then and there agreed to accept and use the full service benefits of the two policies, and the McCook Brothers organization was instructed to send for the bodies and conduct the funerals. Its ambulance, so they were told, was then in Rodessa and would arrive in Atlanta in about fifteen minutes. The understanding was reached and the instructions given at approximately 10 A. M. o'clock. Immediately thereafter, appellant departed and journeyed to Shreveport. Mrs. Beck remained.

The ambulance of McCook Brothers did not reach Atlanta until after 12:30 noon, at which time the attendants thereof were informed by Mr. Allday that his company was handling the funerals. The bodies, on such arrival, were being placed in caskets. In the meantime, after waiting almost two hours for the conveyance, Mrs. Beck, together with two accompanying daughters, selected caskets and solicited and instructed plaintiff to conduct the rites. They had become nervous and impatient by reason of the fact that the corpses had lain there without attention for a considerable period of time. There was no suggestion on the part of the Allday Company that its services be selected.

During the late afternoon of that date, the casketed bodies were transported to the respective homes of decedents' parents in Sibley, Louisiana. After their arrival, appellant and Mrs. Beck selected and secured grave vaults from the Dennis Funeral Home of Minden, Louisiana, assigning in payment therefor the two burial policies issued by the Gibraltar Life Insurance Company. Interment occurred on February 19, 1938, under the joint supervision of plaintiff and the Dennis Funeral Home. All services rendered in connection with the funerals were entirely satisfactory.

The property left by the decedents was purchased during their marriage and belonged to the community of acquets and gains that existed between them. It consisted primarily of an automobile, which was encumbered with a chattel mortgage, a tent, some household goods, and a few personal belongings. Also, there was owing to the deceased husband by his employer earned wages amounting to $34.45. No succession proceedings, for making proper disposition of the estates, have ever been instituted.

Following the burials, appellant took possession of the aforementioned automobile, paid the existing mortgage indebtedness, and made use of it. Also, he received the funds due his son for wages and spent them in his own behalf.

Plaintiff does not contend that Lewis Blackwell, defendant and appellant herein, is liable for the funeral services rendered by reason of any contractual relationship. In this connection, we might state that the evidence conclusively shows the nonexis-

204

tence of a contract between them. It had expected to be paid from an insurance policy on the life of George B. Blackwell, the proceeds of which eventually went to appellant and his wife as beneficiaries under the provisions of the contract; and in this regard, it obtained from Mrs. Beck, when instructed to handle the funerals, an assignment of whatever interest she had therein.

The sole theory under which appellant is sought to be held liable herein is that he took possession of the property and effects of both decedents, thereby effecting an unconditional acceptance of the succession of his son and an intermeddling with the succession of his daughter-in-law; and by his acts he bound himself, according to the laws of this State, for the payment of all debts of the successions.

 With reference to the claimed liability for the expenses of the funeral of the daughter-in-law, reliance is placed by plaintiff on Civil Code, article 1100, which reads: "In case any person shall·take possession of a vacant succession, or a part thereof, without being duly authorized to that effect, with the intent of converting the same to his own use, he shall be liable to pay all the debts of the said estate, exclusive of the damages to be claimed by the parties who may have suffered thereby." This codal provision, in our opinion, has no application here, even if it be assumed that appellant took possession of the estate of such decedent as the owner thereof; because her succession cannot be termed a vacant one. "A succession is called vacant when no one claims it, or when all the heirs are unknown, or when all the known heirs to it have renounced it." Civil Code, article 1095. The record does not disclose that any one of these essentialities exist. In view of this, and as the provisions of said article 1100 are to be strictly construed (Succession of Trosclair, 34 La.Ann. 326), we hold that responsibility for such expenses has not been visited on appellant.

 Undoubtedly, appellant's acts with respect to the aforementioned earned wages and the automobile constituted in law a tacit simple acceptance of the son's succession. An acceptance of that kind results "when some act is done by the heir, which necessarily supposes his intention to accept, and which he would have no right to do but in his quality of heir." Civil Code, article 988. Also, see Civil Code articles 992 and 994. The son died intestate and

without leaving any descendants; therefore, appellant was an heir. Civil Code, article 912. With knowledge that the funds and automobile belonged to the estates of the son and daughter-in-law, he employed them as inheritances and as the owner thereof. The funds were spent as he desired; while the vehicle, after his purchasing of a license therefor and equipping the rear wheels with new casings, was operated day after day to his own advantage. These performances were obviously not merely conservatory in nature.

The effect of the simple acceptance of the son's succession, as resulted from appellant's acts, is that: " * * * it binds him to the payment of all debts of the succession, not only out of the effects which have fallen to him from the succession, but even personally, and out of his own property, as if he had himself contracted the debts or as if he was the deceased himself; unless, before acting as heir, he made a true and faithful inventory of the effects of the succession, as here above established, or has taken the benefit treated of hereafter." Article 1013, Civil Code.

The legal steps mentioned in the quoted article were not taken by appellant before acting as heir.

██ Plaintiff was authorized and employed to conduct the funeral of decedent, George B. Blackwell, by persons bearing a close relationship to him, and it accepted the employment and performed the necessary services in good faith. Therefore, the charges are properly classified as a debt of the succession.

██ The liability of heirs for the payment of debts of a succession, under said article 1013 of the Civil Code, is not solidary in character. Each is responsible only to the extent of the proportionate interest inherited, or, in other words, of his virile share of the estate. Mudd v. Stille's Heirs, 6 La. 17; Kelly v. Giles, 167 La. 287, 119 So. 51; Eustis v. St. Germain, La.App., 161 So. 203; Central Savings Bank & Trust Co. v. Succession of Brandon, La.App., 167 So. 515.

Surviving the deceased, George B. Blackwell, were his father and mother and numerous brothers and sisters. The interest of the father in the succession, according to Civil Code, article 911, was one-fourth. Consequently, appellant is bound for one-fourth of the expenses of his son's funeral, or $66.13.

For the reasons above given, the judgment of the district court is amended by reducing the award from $542 to $66.13, and, as amended, it is affirmed. Costs of the appeal shall be paid by appellee.