DOUCET, Judge.
The trial judge found appellee was the biological child of the decedent, legitimated by the marriage of his parents. In accordance with that finding judgment was entered decreeing Gilbert Gene Ariza, appel-lee, to be the sole surviving child and heir of James R. Carmouche and as such entitled to be placed in possession of all the property belonging to the Succession of James R. Carmouche. From that judgment plaintiff, Annie Brinkley Carmouche, mother of the decedent, appeals. We affirm.
This case concerns the Succession of James R. Carmouche, who died on October 20, 1981 in Alexandria, Louisiana, after having been struck by an automobile while attempting to cross Louisiana Highway # 1. James R. Carmouche was domiciled in Marksville, Louisiana at the time of his death. He was married once and then to Haddy Frank Carmouche on June 11, 1970 in Marksville. A Petition for Notice of Application for Appointment was filed on behalf of Annie Brinkley Carmouche, the mother of James Carmouche, on November 12, 1981. Subsequent to this, a Petition to be Appointed Administrator was filed on behalf of Annie Brinkley Carmouche on December 16, 1981. The estate included a life insurance policy in the amount of $25,000 from Vulcan Life Insurance Company. The total net estate was valued at $22,499.54. On December 24,1981 a Petition for Recognition and Possession was filed on behalf of Gilbert Gene Ariza, appellee, alleging that James Carmouche was the natural father of Gilbert Ariza and that Gilbert Ariza was legitimated by the marriage of Haddie Frank, his mother, and James Carmouche.
A hearing on the rule was held on February 17, 1982. The trial judge ruled that Gilbert Gene Ariza, appellee, was recognized and decreed to be the sole surviving child and heir of the decedent, James R. Carmouche and as such, was entitled to be placed in possession of all the property in the Succession. Plaintiff appealed devolu-tively.
Appellee, Gilbert Gene Ariza, was born on July 25,1959. At the time of his conception and birth, Louis Ariza and Haddie Ariza were husband and wife. Louis’ job as a seaman required that he be away from the matrimonial domicile for long periods of time. In the latter part of the 1950’s, the exact date being in dispute, the couple ceased any resemblance of living together. Louis Ariza and Haddie Frank Ariza were judicially divorced on November 19, 1964 pursuant to a petition for divorce filed by Louis Ariza in Jefferson County, Texas on March 21,1963. Subsequent to this divorce, James Carmouche, the decedent, and Had-die Frank were married in 1970. Thereafter, James Carmouche died on October 20, 1981.
Preliminarily, we observe the law applicable to the case. Civil Code Article 184 provides:
*451 Art. 184. Presumed paternity of husband. The husband of the mother is presumed to be the father of all children born or conceived during the marriage.
This presumption is, of course, re-buttable. Succession of Mitchell, 328 So.2d 451 (La.1974).
Civil Code Article 198 provides:
Art. 198. Legitimation by subsequent marriage of parents. Illegitimate children are legitimated by the subsequent marriage of their father and mother, whenever the latter have formally or informally acknowledged them as their children, either before or after the marriage.
This codal provision has its origin in our French ancestry. As Plainol noted: “Legitimation has an incontestable moral influence. It induces the transformation of irregular households into legitimate families.” Plainol, Civil Law Treatise, Volume, Section 1551, p. 858. The policy behind this provision has, no doubt, been fortified by constitutional developments of recent time. The Louisiana provisions, like the French legislation and judicial interpretations, reflect an attempt to have legal parenthood coincide with biological parenthood, at least where parents establish a legal family entity through the civil relationship created by the marriage of the father and mother.
The issues presented an appeal, as posed by appellant, are:
(1) Is Gilbert Gene Ariza' the illegitimate child of James Carmouche?
(2) Was Gilbert Gene Ariza formally or informally acknowledged by James Carmouche and Haddie Carmouche that he was the child of James and Haddie Carmouche?
(3) Did Gilbert Ariza rebut the presumption of LSA-C.C. Article 184 that Louis Ariza is his biological father?
In support of her contention that James Carmouche was not the father of Gilbert Ariza, nor did he acknowledge him as such, appellant notes that appellee’s birth certificate listed Louis G. Ariza as the father, as did the presumptive father’s petition for divorce, dated March 21, 1963. Paragraph 3 of said petition states that two children were born of the marriage, Louis Ariza, Jr. and Gilbert Ariza. Louis Ariza’s third child, Allen Ariza, was not mentioned in the petition inasmuch as he was born in 1949, prior to the Ariza marriage of 1952. The petition also stated that it would be in the best interest of the children if custody were awarded to defendant Haddie Ariza. A default judgment was rendered in plaintiff’s favor, granting the relief prayed for, ordering petitioner to pay for support of two of his children.
Furthermore, appellant notes that Gilbert Ariza went by the legal name of Ariza throughout his life, naming Louis Ariza as father on his marriage certificate. Additionally, when appellee’s alleged father, James Carmouche, filed for divorce against Haddie Frank Carmouche, appellee’s undisputed mother, the allegations of the petition stated that no children were born between them. Defendant’s answer admitted said allegation.
On the other hand, appellee produced substantial evidence that Gilbert Ariza was indeed the biological son of James Car-mouche and his father acknowledged him as such. Cleveland Carmouche, uncle of James Carmouche, testified that decedent told him appellee was his son. Two other paternal uncles of decedent, Leo Carmouche and Kirby Carmouche, testified likewise.
Daniel Bordelon, platoon sergeant and federal technician with the National Guard, 527 Engineers, B Company, Marksville, Louisiana, testified that he had developed a close relationship with the decedent, James R. Carmouche, since their first acquaintance in 1976. His testimony shows that he first met Gilbert Ariza through James Car-mouche who introduced Gilbert as his son. Mr. Bordelon testified that James Car-mouche had requested he (Bordelon), as platoon sergeant, transfer his son (Gilbert) to the same platoon. Because Mr. Bordelon did not understand that Gilbert carried the surname of Ariza, and not Carmouche, the wrong individual was transferred to the platoon. This gave rise to an incident *452 wherein the decedent spoke to Gilbert about having his last name changed to Car-mouche. When questioned on direct examination, Mr. Bordelon testified as follows:
“Q. So, he wanted him to change his name to Carmouche?
A. He says, what you ought to do is change that name to — change that name tag. We have name tags, over this — I think is’t [sic] on the right sie [sic], if I can recall. He says, what you need to do, Ariza, is change that to Carmouche, so people won’t get mixed up and know who you are.”
This testimony with regard to the desires of the decedent to have Gilbert change his name from Ariza to Carmouche is substantiated by the testimony of Olen Ford, another member of the Marksville National Guard Unit. Mr. Ford also heard James Carmouche tell Gilbert Ariza he should change his name tag from “Gilbert Ariza” to “Gilbert Carmouche” and carry the Car-mouche family name.
When asked how Gilbert and the decedent referred to the other when addressing each other, Mr. Bordelon responded as follows:
“A. He called him son all the time.
Q. Can you tell me what Gilbert would call James?
A. At sometimes he’d call him James, and at other times he’d call him daddy.
Q. And, this was in your presence?
A. Ye.
Q. You’ve overheard this?
A. Yes, many times.
Numerous other members of the guard testified similarly.
Ellis Sampson recalled James Carmouche acknowledging Gilbert Ariza publicly as his son and comparing their physical resemblances, to-wit:
“A. James and I use [sic] to ride together sometimes, and fooling around. And, we’d come to a discussion, and he would tell me that was his son. He said, Ariza is my son.
Q. O.K.
A. And, I would kid around, and I would say, why it would be Ariza instead of Carmouche? He said look at the face.
Q. He said look at the face?
A. Right.
Q. O.K. were there ever any times when he actually had — when both of ’em was there, and have you compared them?
A. Oh yes. Several occasions at the Guard he would do that. He was horsing around, and I would ask him like that, I’d say, who is this, just kidding around? He said, that’s my son. So, he would put his arm around him and say, look at this, look the resemblance. And, on another occasion, he would say, — I would ask him what about the name tag? He’d say, it doesn’t matter. Just look at the face.”
Gerard Prier, also of the Marksville National Guard Unit, recalled questioning James Carmouche about a rumor that Gilbert Ariza was his son. He testified as follows:
“Q. O.K. Now, did you ever have any conversation, or did James ever acknowledge to you that he was the real father, the natural father of Gilbert Ariza?
A. Yes, When he was at Fort Polk — we usually go to Fort Polk I think somewhere around April — March or April, where we do our weapon qualifications. And, you know, at night time, we’d be just sitting around, maybe like a little camp fire. And, we’d usually be shooting the bull, you know. Sometimes, we’d end up talking about the children that they have outside of marriage, or something like that. And, James, you know, I had heard a rumer that Ariza was his child. And, I asked him about it at that time.
Q. O.K. You asked who about it?
*453 A. James Carmouche.
Q. You asked James Carmouche personally?
A. Right.
Q. About whether or not the rumor was correct?
A. Right.
Q. And, what did he tell you?
A. He said it was. He said that Ariza was his son, and then he walked over to him and hugged him around the shoulder, and he said, look at him, and look at the rest of ’em, look at their hair. So,.. .
Q. O.K. so, at the time that he told you — that he acknowledged to you in the presence of other people and Gilbert, is that correct?
A. Right, that’s correct.
Q. That this is my son, went around there and hugged him?
A. Right.
Q. and, you saw this?
A. I did.
Q. And, you heard that?
A. Right.”
Mr. Prier also testified with regard to the pride held by James Carmouche for his son Gilbert Ariza and the father’s interest in his welfare and well-being.
The testimonies of Haddie Frank, mother of Gilbert Ariza, and Louis Ariza, Sr., the presumptive father, reflects that they were married in 1952 in Port Arthur, Texas and were subsequently divorced in 1964. According to their testimonies, they stopped living together in 1957 when Mr. Ariza left Avoyelles Parish to work as a merchant seaman. His work took him first to New York where he stayed for two years and then to San Francisco where he stayed three years. Both Haddie Frank and Louis Ariza, Sr. testified that Mr. Ariza did not return to Avoyelles Parish to see Haddie Frank until 1963 when he advised her he had decided to file for a divorce. Haddie Frank further testified that she did not have sexual intercourse with Louis Ariza, Sr. at any time since 1957 when he left Avoyelles Parish. Her testimony further reflects that she was having an affair with James R. Carmouche commencing in 1957. At first, James Carmouche would visit her on an infrequent basis and subsequently the couple commenced living together. Moreover Haddie Frank identified James Car-mouche as the father of Gilbert Ariza.
When questioned as to whether appellee was his son, Louis Ariza testified as follows:
“Q. O.K. at any time, from 1957, when you left here, until 1959, when Gilbert was born, did you ever come back over here to Marksville? Or did Haddie ever meet you anywhere, where y’all had any intercourse?
A. No, no, no.
Q. If she had a child that would have been born in July of 1959, is there any possible way that that child could be your natural child?
A. It’s impossible.”
To corroborate this testimony, mail received by Haddie Frank from her husband Louis, beginning with a 'postcard from Bombay, India dated March 14, 1958, and ending with an envelope postmarked Fort Lauder-dale, Florida June 27, 1959, was introduced into evidence.
The record further discloses that Gilbert Ariza had upon occasion carried the name of Carmouche as reflected by an identification card from the Louisiana Department of Public Welfare. Additionally, a newspaper article captioned “Area Obituaries” printed by a local paper, the Avoyelles Press, dated November 3, 1981, wherein it was stated James R. Carmouche was survived by “one son, Gilbert, of Marksville” was introduced into evidence.
Furthermore, the testimonies of Jules Frank and his wife, Pearl Frank, also support appellee’s position that James Car-mouche acknowledged Gilbert Ariza as his son. The testimony of Jules Frank places James Carmouche living in the house with Haddie Frank on Washington Street in Marksville, Louisiana. He recites an incident which occurred during Haddie’s preg *454 nancy for Gilbert Ariza and places James Carmouche living in her home at the time. He too recalled that Louis Ariza left Marks-ville in 1957 and did not return to Avoyelles Parish until some 4 or 5 years after his departure in 1957. The testimony of Jules Frank is in accord with that of his wife, Pearl Frank, who also placed James Car-mouche living with Haddie Frank during her pregnancy for their son, Gilbert Ariza. Mrs. Frank recalled James Carmouche placing his hand on Haddie’s stomach when she was pregnant, and with his hand on her stomach, wishing for a boy baby.
The testimony of Sheila Ariza, wife of Gilbert Ariza, reveals her recollection of James Carmouche first meeting their infant-child, Gilbert Ariza, Jr., and he acknowledged the infant as his first-born grandchild.
Appellant seeks to discredit appellee’s evidence as merely representative of the bond which exists between a stepfather and stepson. While much of the evidence could be so construed, we cannot conclude the trial judge was clearly wrong in finding otherwise. The documents, hereinabove, relied upon by appellant could easily be interpreted as a situation wherein parents sought to spare “their” child of the stigma of illegitimacy inflicted by society, at that time, perpetuated by the courts. With the exception of those documents wherein Gilbert Ariza was personally involved, appellee was not party to any of appellant’s supportive evidence. In other words, appellee was a third party insofar as the majority of appellant’s evidence is concerned; hence we know of no form of estoppel which would preclude ap-pellee from sharing his father’s wealth.
Our review of the record supports the trial judge’s conclusion that appellee rebutted the presumption of C.C. Art. 184. James Carmouche acknowledged Gilbert Ariza as his son. The trial judge, applying C.C. Art. 198, correctly concluded appellee was legitimated by the marriage of his parents, thereby entitling him to the benefits of forced heirship.
We believe the result reached herein to be in accord with Succession of Mitchell, supra. There, the Supremé Court was faced with the factual situation where children were born during the marriage of their mother and first husband. The mother later divorced this husband and married the biological father of these two children. The first marriage commenced in 1926. Thereafter, the first husband moved to Illinois, never to return or contact his wife. In 1930, while the mother was still married to the first husband, she began to live with the children’s biological father. The children were born between 1931 and 1937. At the time of their birth, they were registered under the name of the biological father, the second husband of their mother. The mother did not marry the second husband until 1941. A divorce was granted to the mother and her first husband a few days before she married the second husband, the biological father of the children. The children had been raised as the second husband’s children and were considered to be the second husband’s children by the community in which they lived, as here. When the father died, the biological children sought to participate in his estate. The trial court dismissed plaintiffs’ suit and the appellate court affirmed. A unanimous Supreme Court reversed, applying C.C. Art. 198.
Considering the due regard rightly given to trial courts’ factual findings, the rule of Mitchell is all the more applicable to the case at bar.
Accordingly, the judgment appealed is affirmed at appellant’s cost.
AFFIRMED.
DOMENGEAUX, J., concurs in the result.