608 So.2d 1092 (1992)
SUCCESSION OF Narcisse COSSE, Jr.
No. 91-CA-1967.
Court of Appeal of Louisiana, Fourth Circuit.
November 13, 1992.
Rehearings Denied December 16, 1992.
Sidney D. Torres, III, Becky Raymond Cieutat, Michael R. Delesdernier, Chalmette, for appellant.
*1093 Brian J. Waid, Bubrig and Waid, Buras, for appellees.
Before BYRNES, ARMSTRONG, PLOTKIN, JONES and WALTZER, JJ.
PLOTKIN, Judge.
Ernest Cosse, Jr., decedent Narcisse Cosse Jr.'s grand-nephew, appeals a trial court judgment placing the assets of decedent's estate in the possession of Vincent D'Antoni, Jr. and Albert D'Antoni and their siblings. The trial court's decision was based on La.C.C. art. 184, which in 1933, when the decedent died, established a presumption that the husband of the mother was the father of "all children conceived during the marriage," and La.C.C. art. 187, which established a presumption that the husband of the mother is the father of a "child born three hundred days after the dissolution of the marriage." After considering the evidence in the light of all the jurisprudence in the area of presumptive paternity, we reverse.

Facts:
On October 17, 1990, appellees filed a Petition for Possession in the succession of Narcisse Cosse Jr., who died intestate in Plaquemines Parish, Louisiana on October 19, 1933. In their petition, the D'Antonis allege that they are the presumed grandchildren of the decedent and thus legal heirs to inherit property which was to be returned to his estate as a result of legislative action involving the Bohemia Spillway in Plaquemines Parish. No succession proceedings were opened prior to the filing of the petition in this case.
The appellees' claims are based on the following facts.
Decedent Cosse and Josephine "Seraphine" Quatrochi[1] were married in Point Pleasant, Plaquemines Parish, Louisiana, on February 1, 1892. That marriage was terminated by a default judgment of divorce entered on October 23, 1899 and confirmed on October 31, 1899. The decedent had filed the petition for divorce on November 14, 1895. A handwritten note on the petition for divorce stated that no issue of the marriage existed.
At the time the divorce proceedings were filed, the decedent and his wife were living separate and apart. In fact, the decedent continued to reside in Plaquemines Parish, while his wife moved to New Orleans, where she lived in open concubinage with Joseph A. D'Antoni from the time the decedent filed the petition for divorce until sometime after the final judgment of divorce was entered.
During the time that Seraphine was living with D'Antoni, she bore three children; two of those children were born prior to her divorce from the decedent. John Joseph D'Antoni was born on March 30, 1898. The second child, named Peter, was also born prior to the final judgment of divorce, although the record is silent concerning his exact date of birth. Because Peter died at the age of 3, prior to Cosse's death, his birth is not pertinent to this appeal.
Seraphine's third child by D'Antoni, Vincent James D'Antoni, was born on February 20, 1900, less than 300 days after Cosse was granted a final judgment of divorce from Seraphine.
Cosse died without issue on October 19, 1933. John D'Antoni died, without issue and without having been married, on October 12, 1959; his only heir was his brother, Vincent. Vincent was married once, to Lillian Antoinette Bettencourt, who predeceased him; they had five children, including Vincent D'Antoni, Jr. and Albert D'Antoni, appellees herein. Vincent died on March 24, 1977.
Appellant challenges the trial court judgment, which ordered, in pertinent part, as follows:
That John Joseph Anthony [sic] D'Antoni and Vincent James D'Antoni, [sic] be recognized and decreed to be the sole surviving heirs and children of the decedent, Narcisse Cosse, Jr., and as such, *1094 entitled to be, and are hereby placed in possession of all of the assets belonging to the succession of the deceased, each to receive an undivided one-half (½) interest in the property hereinafter described.

Cosse's Presumed Paternity
The trial court's judgment that John Joseph D'Antoni and Vincent James D'Antoni are the sole heirs of Narcisse Cosse, Jr. was based on the following Louisiana Civil Code articles, as they read in 1933:
Art. 184. The husband of the mother is presumed to be the father of all children born or conceived during the marriage.
Art. 186. The child capable of living, which is born before the one hundred and eightieth day after the marriage, is not presumed to be the child of the husband; every child born alive more than six months after conception is presumed to be capable of living.
Art. 187. The same rule applies with respect to the child born three hundred days after the dissolution of the marriage, or after the sentence of separation from bed and board.
Traditionally, Louisiana caselaw construed the above articles as establishing what amounted to an irrebuttable presumption of paternity. Thomas E. Carbonneau, Analytical and Comparative Variations on Selected Provisions of Book One of Louisiana Civil Code with Special Consideration of Role of Fault in Determination of Marital Disputes, 23 Loyola L.Rev. 999, 1040 (1981). See also Katherine Shaw Spaht and William Marshall Shaw, Jr., The Strongest Presumption Challenged: Speculations on Warren v. Richard and Succession of Mitchell, 37 La.L.Rev. 59 (1986); Robert A. Pascal, Who is the Papa? (The Husband in Louisiana; the Paramour in France), 18 La.L.Rev. 685 (1958).
An historical study of the caselaw construing the above provisions reveals that courts often "considered the article 184 presumption to be an instrument by which to confer the status of legitimacy upon children born of the wife's relationship with a man other than her husband." Carbonneau at 1041. Traditionally, the presumption was considered "absolute and irrefutable," and a husband's action in disavowal was almost never successful. Succession of Goss, 304 So.2d 704, 708 (La. App. 3d Cir.1974), writ denied 309 So.2d 339 (La.), cert. denied 423 U.S. 869, 96 S.Ct. 133, 46 L.Ed.2d 99 (1975). As a result the courts "frequently related two persons in the father-child bond who could not possibly have a biological connection." Spaht & Shaw at 67. "Application of the presumption occasionally produce[d] absurd results". Id. at 65. Often, the presumption "imposed legitimate descent from the husband of the mother on children who never claimed him as father and imposed paternity on husbands in situations in which no geneticist or layman would even suspect him of fatherhood in fact." Pascal at 1041. Thus, under the historical interpretation of the presumption of paternity articles, the trial court judgment presuming that Cosse fathered Seraphine's children by D'Antoni, one of whom was born during her marriage to Cosse and one of whom was born within 300 days of the dissolution of that marriage, would have been correct.

Cosse's Right to Disavow
Despite the above rule, at the time of Cosse's death, the Civil Code did provide a method, as it does today, whereby a presumptive father could disavowal paternity of a child conceived by his wife during the existence of their marriage or born within 300 days of the dissolution of the marriage. La.C.C. art. 191 stated as follows:
In all the cases above enumerated, where the presumption of paternity ceases, the father, if he intends to dispute the legitimacy of the child, must do it within one month, if he be in the place where the child is born, or within two months after his return, if he be absent at that time or within two months after the discovery of the fraud, if the birth of the child was concealed from him, or he shall be barred from making an objection to the legitimacy of such child.
Under the jurisprudence, a husband's presumed paternity does not become rebuttable so long as the husband still has the right to disavow the child under any of the circumstances established by the above article. Succession of Mitchell, 323 So.2d 451, 454 (La.1975). In Mitchell, the Louisiana *1095 Supreme Court reversed a trial court judgment denying the natural children of the decedent's brother the right to inherit from the decedent. The trial court found that the children were not legitimated by the marriage of their parents after their births because they were legally presumed to be the children of the mother's former husband, to whom she was married at the time of their conception. In reversing, the supreme court placed special significance on the fact that the mother's first husband had left the parish where the children were born several years prior to their births. The court noted that under La.C.C. arts. 191 and 192, the husband might still have a right to seek disavowal of the children. Since their legitimacy as children of the first husband could still be successfully attacked, the court said, the presumption of paternity was rebuttable with evidence establishing that they were the natural children of another man. The court went on to find that the children were legitimated by their parents' marriage subsequent to their births under La.C.C. art. 198. See also Succession of Carmouche, 421 So.2d 449 (La.App. 3d Cir.1982), which also deals with a husband absent from the parish at the time of the child's conception.
The Mitchell and Carmouche decisions establish two principles which are pertinent to the instant case. First, they stand for the proposition that a husband's presumed paternity is rebuttable so long as he has the right to challenge it. Second, they indicate that the word "place" in La. C.C. art. 191 means "parish." Thus, when the husband is absent from the parish where the child is born, his presumed paternity is rebuttable until two months after he returns to the parish. In the instant case, the facts indicate that Cosse resided in Plaquemines Parish from the time he and Seraphine were married until his death, while Seraphine's children were born in Orleans Parish. Thus, under a technical reading of the article in the light of the pertinent jurisprudence, Cosse's right to bring a disavowal action continued up to the time of his death. Therefore, the presumption of Cosse's paternity should be considered rebuttable in this case.
This result is also supported by other jurisprudence on the subject. The circuit court opinions in Goodrich v. Goodrich, 421 So.2d 958 (La.App. 3d Cir.1982) and Naquin v. Naquin, 374 So.2d 148 (La.App. 1st Cir.1979) also indicate that under the circumstances, Cosse's right to contest the legitimacy of Seraphine's children did not prescribe prior to his death. In Naquin, the mother's husband at the time the child was conceived failed to bring a disavowal within the time limitations established by the codal articles, despite the fact that the child's birth was not concealed from him. The husband later initiated a disavowal action, when he became aware that the mother intended to take advantage of the presumptions of paternity established by the Civil Code. The appellate court reversed a trial court judgment granting an exception of prescription, saying that the prescriptive period did not begin to run until the husband was put on notice that the mother intended to assert his paternity. The Naquin court found that the words "birth of a child" in the codal article "refers to learning of the birth under circumstances that would point to the possibility of assertion of plaintiff's paternity." 374 So.2d at 149. In Goodrich, the court applied the same rule, but found that the husband's disavowal action had prescribed because he had been placed on notice of the mother's intentions months before he filed the action. 421 So.2d 958.
In the instant case, Cosse unquestionably was never placed on notice that either Seraphine or her children intended to assert his paternity. Since Cosse never learned of the birth of the children "under circumstances that would point to the possibility of assertion of [his] paternity," his action for disavowal had not prescribed at the time of his death.

*1096 Heirs' Right to Disavow

A cause of action in disavowal may be passed to the heirs of the presumed father under the following conditions, established by La.C.C. art. 192, as it read in 1933:
If the husband dies without having made such objection, but before the expiration of the time directed by law, two months shall be granted to his heirs to contest the legitimacy of the child, to be counted from the time when the said child has taken possession of the estate of the husband, or when the heirs shall have been disturbed by the child, in their possession thereof.
In the instant case, Cosse's heirs were not disturbed in their possession of his estate until the instant case was filed. Prior to that time, neither Cosse himself nor his heirs had any reason to think that either Seraphine, her children, or her grandchildren intended to assert Cosse's paternity of the children. Thus, the prescriptive period for the heirs' cause of action did not begin to run under the principles established by the jurisprudence until this suit was filed. Since Cosse's presumed paternity was still considered rebuttable under the rule established by Mitchell at the time the instant suit was filed, the trial court erred in prematurely applying the presumption as though it were irrebutable.
Additionally, the use of the words "the child" in the statute indicates the legislature's intention to require that a husband's heirs file a separate disavowal action only when their possession of the husband's estate is disturbed by the putative child(ren) himself. The fact that the definition of "the child" is limited to the putative child himself is demonstrated by the use of the phrase "contest the legitimacy of the child." In the instant case, the putative children are dead; they never sought to disturb the Cosse heirs' possession of the decedent's estate during their lifetimes. Technically, the Cosse heirs' possession of the estate was never, and now can never, be disturbed by the child involved. Under the circumstances, reading the statute to require the Cosse heirs to file a separate disavowal action at this late date before they can be allowed to rebut the presumption would work an unfair result. The D'Antoni grandchildren waited more than 60 years after Cosse's death before seeking filiation with the decedent, an action obviously motivated only by an attempt to receive financial gain. Since Cosse's presumptive paternity is rebuttable under the jurisprudence interpreting the codal articles, we will consider whether the record evidence is sufficient to rebut the presumption, even though the Cosse heirs have not previously filed a disavowal action.

Sufficiency of the Evidence to Rebut the Presumption
The record in the instant case is replete with evidence that D'Antoni, not Cosse, was the father of Seraphine's children, John Joseph D'Antoni and Vincent James D'Antoni. First, both children used D'Antoni as their last names throughout their lives and their children's names are D'Antoni. The record includes certificates of baptism and certificates of death for both children in which Joseph A. D'Antoni is listed as father. Additionally, all the evidence contained in the original divorce proceedings between Cosse and Seraphine indicates that they had no children. Not only does the petition contain a specific note to that effect, but two witnesses, Miss Rachel Kelley and Benjamin Buras, testified that Seraphine and Cosse had not lived together for four years prior to the divorce, that Seraphine was living in New Orleans with an Italian named Joe, and that Seraphine had borne two children by Joe. That evidence is certainly sufficient to rebut the presumption.
We note that the result in the instant case is consistent with the purpose behind the presumption of paternity articles, which is to protect children from the stigma of illegitimacy, a consideration which *1097 has no bearing on this case because the children involved are dead and have no need of protection. Thus, reversal of the trial court judgment does not impair the purpose of the article.

Recent Developments in the Law Governing Presumptive Paternity
Although not strictly applicable to the case at hand because it was decided almost 60 years after the death of the decedent here, the first circuit recently decided a case involving almost the exact opposite issue presented here. Gnagie v. Department of Health & Human Resources. 603 So.2d 206 (La.App. 1st Cir.1992). The decision in that case, and the reasoning applied by the court to reach that decision, supports the result in the instant case.
In Gnagie, the court refused to apply the presumption of paternity strictly. The court found that the plaintiff, the legal father of a child killed by abuse inflicted by the mother's boyfriend, had no cause of action in a wrongful death and survival action because the presumption of paternity established by Art. 184 was rebutted. The court stated as follows:
After carefully reviewing all the evidence presented, we find that James Gnagie does not have a right to bring an action for the wrongful death of Joshua Gnagie nor is he entitled to assert the child's survival action. Although James Gnagie is Joshua's "legal" father in that he was married to the child's mother at the time of his conception and birth, the evidence clearly established that James Gnagie was not the child's biological parent. Moreover, during the child's lifetime, James Gnagie did not develop a parental relationship with Joshua. In fact, the record established that Gnagie was a virtual stranger to the child. From the time Joshua Gnagie was born, he lived with and was reared by his mother or members of her family. The record shows that James Gnagie did little or nothing to shoulder his responsibilities as a parent.
Clearly, one having no biological relationship and no factual personal relationship whatsoever to the deceased child other than the fictional position of "legal father" should not be permitted to obtain a monetary award because of the child's death.
. . . . .
Therefore, we hold that, with respect to entitlement to bring wrongful death and survival actions under LSA-C.C. Art. 2315, the legal fiction of paternity created by virtue of LSA-C.C. art. 184 and 189 may be refuted or overcome by sufficient evidence that the legal father is not the biological father. Where the evidence is so overwhelming that the legal father is not the actual biological father, as it was in this case, this court will allow the legal fiction to be overcome in the interest of justice....
Id. at 214.
Significantly to the case at hand, one of the things cited by the Gnagie court as evidence that the plaintiff was not the child's biological father is the fact that Gnagie alleged in his petition for divorce from the child's mother that no children had been born of the marriage. The court treated that allegation as an extrajudicial confession, which operated to estop Gnagie from making a contrary claim in the new suit.
The Gnagie case illustrates the fact that courts no longer apply the presumption of paternity strictly when the facts reveal that application of the presumption would result in an injustice. In Gnagie, the court allowed circumstantial evidence to overcome the presumption of paternity, despite both the fact that the presumptive father was not absent from the place where the child was born and the fact that the presumptive father was obviously aware of the child's existence. Our result in the instant case, which prevents the plaintiffs from benefiting from the "legal fiction" of *1098 presumptive paternity, is consistent with this more contemporary analysis.
We recognize, of course, that the Gnagie case is readily distinguishable from the case at hand because the party seeking to gain a material benefit in that case was the presumptive father, while the plaintiffs in the instant case are the presumptive grandchildren. Nevertheless, we believe the Gnagie case is instructive concerning the extent to which the presumption should be carried to allow financial gain to flow to plaintiffs whose claims are based purely on the legal presumption. As illustrated by Gnagie, the more modern view is to disallow such recovery. As the Gnagie court stated, "this court [also] will allow the legal fiction to be overcome in the interest of justice." Id.

Conclusion
Accordingly, the trial court judgment is reversed.
REVERSED.
WALTZER, J., concurs with written reasons.
BYRNES, J., concurs with WALTZER, J., with additional reasons.
JONES, J., dissents.
WALTZER, J., concurring with written reasons.
I concur in the results but not for the reasons stated.
The majority opinion states at page 1095 that: "... the word `place' in La.C.C. art. 191 means `parish'." I cannot agree with this statement. I believe the correct interpretation to be that the word "place" is broad enough to include the word "parish" as well as other concepts of location, including "state" and "city", but is not limited to the word "parish".[1]
Additionally, I cannot agree that the paternity disavowal action can be brought 92 years after the birth and 31 years after the death of the first child, 91 years after the birth and 89 years after the death of the second child, 90 years after the birth and 13 years after the death of the third child, 91 years after the divorce and 57 years after Narcisse Cosse's death.
Narcisse Cosse died intestate on October 19, 1933.
C.C. Art. 834 provides:
"The succession, either testamentary or legal, or irregular, becomes open by death ..."
Civil Code Article 878[2] provides:
Unconditional successors are those who accept without any reservation, or without making an inventory, whether their acceptance be express or tacit.
Upon his death, Narcisse Cosse was survived by his brother Isidore Cosse and other brothers and sisters. Narcisse was buried on October 20, 1933 in Our Lady of Good Harbor Church grounds, as is indicated by the certificate therefrom contained in the record. Narcisse Cosse was not buried in a potter's field, but received a Catholic burial in consecrated grounds. No D'Antoni paid for that burial, a Cosse paid for the burial. Upon his death, his personal property, his clothing and such, were not handled by any of the D'Antonis, but rather were handled by the Cosses[3]. In R.S. Allday *1099 Supply Co. v. Blackwell, 197 So. 202, 204 (La., 1940), the Supreme Court stated:
"The sole theory under which appellant is sought to be held liable herein is that he took possession of the property and effects ... thereby effecting an unconditional acceptance of the succession ..."
In Allday, supra, the father took possession of the personal effects of the decedents. No succession proceedings were ever instituted. The court ruled that by taking possession of the personal property of the decedents, he tacitly unconditionally accepted the succession. Accordingly, he was liable for the debts of the succession including the burial costs which the court ruled were debts of the succession.
In Kelley v. Kelley, 3 So.2d 641, 646, 198 La. 338 (1941) the Supreme Court stated:
"When an heir accepts a succession and takes possession of its effects unconditionally, he becomes the owner of the property and the succession, as such, ceases to exist." (citations omitted).
Civil Code Article 3502 provides as follows:
"An action for the recognition of a right of inheritance and recovery of the whole or a part of a succession is subject to a liberative prescription of thirty years. This prescription commences to run from the day of the opening of the succession."
Accordingly, I would find that Narcisse Cosse's brothers and sisters who survived him[4], Jean P. Cosse, who died in 1937, Amelia Cosse who died in 1956, Isidore Gaspard Cosse, who died in 1938 and Espasie Cosse, who died in 1941, tacitly and unconditionally accepted his succession by taking possession of his clothing and other personal property. Allday and Kelley, supra, the succession was openned upon death and closed upon that taking of possession of the personal property of the deceased. Under C.C. Art. 3502, the D'Antoni's had 30 years from October 20, 1933 or until October 20, 1963 in which to bring their action. The petition was not filed until October 17, 1990 or approximately 27 years too late. Plaintiff's pretrial memo at page 4 mentions that even if an action in desaveu were construed to have been filed it would have been filed too late.
Accordingly, I conclude that the trial court erred and that the judgment should be reversed.
BYRNES, Judge, concurring with WALTZER, Judge, with additional reasons:
I concur with the opinion of Waltzer, J. in its entirety. Additionally, for approximately 90 years the D'Antonis held themselves out to the community by every standard of normal proof of filiation as set forth in LSA-C.C. Arts. 194 and 195 (not to mention death notices and other opportunities to acknowledge kinship) as having no relationship to the Cosse family. The Cosses never could have anticipated that they would face this challenge from the D'Antonis nor could they could be expected to take such steps to protect their rights and preserve any evidentiary support for their claim as might exist. To allow the D'Antonis to benefit from a delay of such duration that it can have few rivals in the annals of Louisiana jurisprudence would be unconscionable. I feel strongly that the Cosses are entitled to claim the fullest advantage of the doctrine of laches giving them a presumption of the validity of their tacit acceptance of the succession of Narcisse; and to the extent that it could be argued that the evidence in the record is in any way lacking or insufficient, that they be afforded a presumption that such evidence is lost or become obscured, but if found would prove their case. Labarre v. Rateau, 210 La. 34, 26 So.2d 279, 285 (1946).
JONES, Judge, dissenting.
The majority relies on a technical reading of La. C.C. article 191, (repealed in 1976 *1100 but the law at the time of Cosse's death), in asserting that Cosse's right to bring a disavowal action continued up to the time of his death. Therefore, the majority submits that the presumption of Cosse's paternity should be considered rebuttable in this case. I disagree.
I am not convinced that the majority is correct in its interpretation of La.C.C. article 191 as discussed in Succession of Mitchell, 323 So.2d 451 (La.1975) and Succession of Carmouche, 421 So.2d 449 (La. App. 3d Cir.1982). These cases cannot be interpreted by this court to reverse 150 years of law in the area of paternity rights. The record, which contains a Note of Evidence established at the time the default judgment of divorce was entered on behalf of Cosse, supports the trial court's finding that Cosse was put on actual notice that two children were born to Seraphine. When Cosse failed to disavow John and Vincent, the right to do so, which was strictly personal to him, was extinguished. Burrell v. Burrell, 154 So.2d 103 (La.App. 1st Cir.1963).
A disavowal action can only be brought by way of a separate proceeding. In the absence of a disavowal action, paternity is presumed under La.C.C. 184. Appellees are entitled to inherit by representation. I would affirm the trial court's judgment.
NOTES
[1] Seraphine's name is spelled differently in a variety of documents. For consistency, we will refer to her as "Seraphine" throughout this opinion.
[1] It should be noted that in Succession of Mitchell, supra, Mr. Connors not only left the parish, he left the state, moving to Chicago, Illinois. In Succession of Carmouche, supra, Louis Ariza went to sea as a merchant seaman. He worked out of the ports of New York and San Francisco. He also left not merely the parish, but also the state.
[2] Civil Code Article 878 is a reenactment of Article 882 of the Civil Code of 1870 with out substantive change. The word "successors" has been substituted for the word "heirs" in order to bring the article in line with the new word usage in the Code, but no substantive changes were made by that substitution. In all other respects, this Article is exactly as it was in 1870 and as it was upon Narcisse Cosse's death in 1933.
[3] I am specifically not holding that payment of burial debts acted as a tacit acceptance of a succession. C.C. Art. 1001. I am only pointing this out as an evidentiary matter which indicates that the Cosse's took possession of Narcisse Cosse's personal property.
[4] Narcisse Cosse's sister Josephine Cosse died in 1932, thus predeceasing him.