VICTORY, Judge.
This appeal arises from plaintiff’s suit to disavow paternity. Through a court appointed curator, the minor child filed peremptory exceptions of prescription and no cause of action. After a hearing, the trial court sustained both exceptions and dismissed the plaintiff’s suit. The father appeals. We amend and affirm.
FACTS
Plaintiff, Donnie R. Williams, brought this action to disavow paternity of Christopher Williams, a minor child born, but not conceived, during his marriage to Patricia V. Williams. The following chronology sets forth the pertinent events.
December 16, 1985: Donnie married Patricia in Richland Parish knowing she was pregnant.
July 31, 1986: Minor child, Christopher, was born during the marriage.
June 8, 1987: Parties were legally separated; joint custody awarded; plaintiff was ordered by agreement to pay child support.
January 28, 1988: Parties were legally divorced; joint custody and support order maintained.
September 14, 1988: First blood test drawn.
December 13, 1988: Second blood test drawn.
February 3, 1989: Blood test result showed Donnie could not be the child’s biological father.
November 21, 1989: Donnie filed suit to disavow paternity against mother and minor child.
Patricia testified at the hearing on the exception of prescription that Donnie knew she was pregnant and that he wanted to have blood tests done before the marriage. She also told him “he could either marry me ... not knowing or he could not marry me at all.” She denied deceiving or tricking him into marriage by saying the child was his, but admitted she had a suspicion the child was not his. Even though Donnie admitted a friend informed him of Patricia’s “bad reputation in school,” he testified he believed the child to be his at the time of marriage and claimed he never requested a blood test be taken at that time.
Seven and one-half months after marriage, Christopher was born and given plaintiff’s name. Accompanying the defendant to the hospital, plaintiff had full knowledge of the child’s birth.
The plaintiff admits that the child was dark complected at birth, but claims his suspicions were not aroused until they separated in June of 1987. Nevertheless, he agreed to pay Patricia child support in the separation agreement. According to the *114 plaintiff, the child did not appear to be of a different racial origin until the time of their divorce, January 28, 1988. Nevertheless, pursuant to the parties’ agreement, the plaintiffs child support order was maintained. This was the first time the plaintiff admits pressing Patricia for a blood test.
Confirmed by her sister, Judy Viola, the defendant asserted that Donnie continually asked that blood tests be performed before and after the child was born. Patricia finally submitted to testing on September 14, 1988 and December 13, 1988. The tests results, released February 3, 1989, indicated that Donnie was not the biological father of the child. Nevertheless, he did not file the present suit to disavow until November 21, 1989, almost ten months after the report was issued.
EXCEPTION OF PRESCRIPTION
The plaintiff claims the trial court erred in sustaining the child’s exception of prescription. Specifically, the plaintiff asserts that Patricia practiced deceit in “lulling” him into believing that the child was his and causing him to file suit untimely. For these reasons, the plaintiff seeks to extend the peremptive period for disavowal actions found in LSA-C.C.Art. 189 which reads as follows:
A suit for disavowal of paternity must be filed within one hundred eighty days after the husband learned or should have learned of the birth of the child; but if the husband for reasons beyond his control is not able to file suit timely, then the time for filing suit shall be suspended during the period of such inability.
It is undisputed that Donnie had immediate knowledge of Christopher’s birth. Therefore, it was incumbent upon him to institute disavowal proceedings within 180 days. The record reflects that plaintiff’s petition for disavowal was not filed until November 21, 1989, almost three years and four months after the child’s birth. Thus, Donnie’s right to disavow paternity was prescribed at the time he filed his action, unless, “for reasons beyond his control,” he was unable to file his suit timely. LSA-C.C.Art. 189.
Cases interpreting Civil Code Article 189 have applied suspension of the 180 day period only in situations where the husband does not have notice of either (1) the child’s birth or (2) circumstances apprising him of a possible paternity claim. See Robertson v. Young, 433 So.2d 421 (La.App. 4th Cir.1983) and Naquin v. Naquin, 374 So.2d 148 (La.App. 1st Cir.1979). Throughout our jurisprudence, the codal articles governing actions to disavow paternity have been given strict construction. The presumptions were created in order to preserve the family unit and avoid the stigma of illegitimacy and resultant disinherison accompanying successful disavowal actions. Phillips v. Phillips, 467 So.2d 132 (La.App. 3d Cir.1985); Pounds v. Schori, 377 So.2d 1195 (La.1979).
Assuming, arguendo, the language “for reasons beyond his control is not able to file suit timely” found in LSA-C.C. Art. 189 could suspend the running of the 180 day period under the facts of this case, by his own admission, Donnie questioned the child’s paternity at the time of legal separation, June 8, 1987. Assuming, arguendo, he was deceived by his wife before marriage and given assurances that he was the biological father, he was so suspicious by September 14, 1988 that blood tests were administered at his insistence. The report excluding him from being the child’s father was furnished February 3, 1989. Yet, he then waited almost ten months to file his disavowal action, more than 180 days after the latest possible date the prescriptive period could have begun to run.
Plaintiff argues Patricia assured him after the blood tests that her new husband planned to adopt the child, justifying further delay in filing suit. The evidence is not convincing that the plaintiff was deceived in any way by her attempt to discuss adoption. The testimony revealed that Patricia only discussed the possibility of adoption with her attorney after the test results were received, but never authorized him to prepare the petition, nor paid him any money.
*115 Donnie’s argument concerning possible adoption is similar to the argument presented in Farrell v. Farrell 555 So.2d 39 (La.App. 1st Cir.1989) in which the presumed father unsuccessfully claimed justifiable delay in filing suit in order to allow time for blood testing. Even though there was discussion of possible adoption, Donnie, like the father in Farrell, voluntarily chose not to file a disavowal action. The adoption discussions did not render him “unable” to file suit timely; the choice to bring an action to disavow was totally within his control, in spite of any adoption possibilities.
For the above reasons, we conclude that the trial court was correct in dismissing the plaintiffs suit. However, since the right of disavowal was extinguished by peremption, rather than prescription, we supply the plea of peremption in accordance with LSA-C.C. Art. 3460. Farrell v. Farrell, supra.
CONSTITUTIONALITY
Appellant also argues that Louisiana’s disavowal statutes, especially LSA-C.C. Art. 188, violate his procedural, substantive, and property rights guaranteed in the United States Constitution. We disagree. A similar argument involving similar California statutes was recently rejected by the United States Supreme Court in Michael H. v. Gerald D, 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989).
We believe the presumption of paternity found in LSA-C.C. Art. 184, the loss of the right to disavow by marrying a pregnant woman found in LSA-C.C. Art. 188 [1], and the time limit enunciated in LSA-C.C. Art. 189 are all rationally related to this state’s vital interests in disallowing certain paternity cases from being litigated, especially years after the child’s birth. The stigma of illegitimacy and resultant disinherison associated with such prolonged litigation can only foster emotional scars for the child.
However, it is unnecessary for us to reach the claim that LSA-C.C. Art. 188 is unconstitutional. Although the trial judge ruled plaintiff failed to state a cause of action in his petition, the trial court was clearly wrong. An exception of no cause of action is determined only from the contents of the petition, not from the evidence. Plaintiff’s petition did not allege he knew Patricia was pregnant at the time of their marriage; therefore, the judge had no basis to apply LSA-C.C. Art. 188. If this case was not being resolved on the peremption issue, we would be required to reverse the trial court’s ruling on the exception of no cause of action. Since Article 188 is not the basis for the dismissal of plaintiff's suit, he may not challenge its constitutionality. State v. McMahon, 391 So.2d 1120 (La.1980).
CURATOR FEES
The curator appointed to represent the minor filed a motion to have taxed as costs, specific amounts for attorney fees and expenses incurred in connection with the appeal. The curator filed an affidavit setting forth both his time expended and expenses incurred. We find that the fees and expenses are reasonable, except for the estimated time listed for oral argument and travel, since this case was submitted without argument. For these reasons, we set the curator’s fees and expenses at $1,166.09.
DECREE
Accordingly, the judgment appealed from is amended to reflect the plaintiff’s action for disavowal is dismissed on a plea of peremption supplied by this court. The *116 curator fees and expenses are set in the amount of $1,166.09 and are taxed as costs. All costs in the trial court and in this court are assessed to appellant.
AMENDED, AND AS AMENDED, AFFIRMED.

. Donnie argues that the 1989 amendment to LSA-C.C.Art. 188, which reads as follows, is applicable to this case:
However, if the woman has acted in bad faith and has made a false claim of fatherhood to the marrying spouse, he may disavow paternity provided that he proves such bad faith on the part of the mother, and he proves by a preponderance of the evidence that the child is not his.
We disagree. The 1989 Amendment did not become effective until September 3, 1989, is clearly substantive, and is not to be applied retroactively. See e.g. Pounds v. Schori, supra, and State v. Manning, 390 So.2d 494 (La.1980).