662 So.2d 90 (1995)
Lionel E. SMITH
v.
Betty J. DISON, Wife of Lionel E. Smith.
No. 95-CA-0198.
Court of Appeal of Louisiana, Fourth Circuit.
September 28, 1995.
*91 J. Wayne Mumphrey, George N. Bischof, Jr., Law Offices of J. Wayne Mumphrey, Chalmette, for appellant.
Sidney D. Torres, III, Becky Raymond Cieutat, Ann Mandle Quin, Law Offices of Sidney D. Torres, III, Chalmette, for appellee.
Jacques A. Sanborn, Dysart, Sanborn & Tabary, Chalmette, for Courtney R. Smith.
Before LOBRANO, ARMSTRONG and WALTZER, JJ.
LOBRANO, Judge.
This appeal arises from a judgment granting defendant-appellee, Betty Jean Dison's Peremptory Exception of Prescription and dismissing plaintiff-appellant, Lionel E. Smith's Petition for Disavowal of Paternity.

FACTS AND PROCEDURAL HISTORY:
The following facts are undisputed.
Lionel E. Smith and Betty Jean Dison were married on March 13, 1976 in St. Bernard Parish. The couple separated without reconciliation on June 15, 1976.
Courtney R. Smith was born to Betty Jean Dison Smith on November 27, 1980 at Pendleton Memorial Methodist Hospital. At the time of Courtney R. Smith's birth, Betty Jean Dison Smith and Lionel E. Smith were still married. Lionel E. Smith is listed as the father on Courtney R. Smith's birth certificate. Betty Jean Dison Smith and Lionel E. Smith were divorced on May 21, 1985 at which time Betty Jean Dison Smith was granted the care, custody and control of Courtney R. Smith. At the time of the birth of Courtney R. Smith, Betty Jean Smith was living with Eddie Miller, the biological father of Courtney R. Smith. Eddie Miller never denied paternity of Courtney R. Smith and provided support for the child from 1980 to 1994.
Lionel E. Smith knew of the child's birth, knew the child carried his name and that Eddie Miller was the biological father. Lionel E. Smith never provided support for the child.
On August 2, 1994, Betty Jean Dison Smith filed a Rule to Establish Child Support against Lionel E. Smith. In response, Lionel E. Smith filed an Exception of No Right of Action on August 29, 1994 asserting that he is not the biological father of Courtney R. *92 Smith. The exception was denied. No writs were taken.
Lionel E. Smith subsequently filed a Petition to Disavow Paternity on September 14, 1994. On September 27, 1994 the parties entered into a consent judgment for child support of $250.00 per month for a period of six months, each party reserving their rights.
On October 3, 1994, Betty Jean Dison Smith filed a Peremptory Exception of Prescription requesting dismissal of the Petition for Disavowal on the grounds that the action had prescribed. The trial court granted the Exception of Prescription on November 2, 1994. On November 17, 1994, Lionel E. Smith filed a third-party demand against Eddie Miller, the biological father of Courtney R. Smith.
Lionel E. Smith appeals the trial court's granting of the Exception of Prescription dismissing his Petition for Disavowal. He asserts a number of errors which we have consolidated as follows:
1) The trial court erred in granting the Exception of Prescription and dismissing his Petition for Disavowal;
2) The trial court erred in denying his Exception of No Right of Action to the rule for child support.
3) The Civil Code Article 189 prescriptive period violates equal protection of the laws.
In addition, Lionel Smith's arguments raise the spectre of whether or not dual paternity is still a viable legal principle in light of changing social mores. It is appellant's position that the obligation of child support in the instant case lies solely with the biological father.

PRESCRIPTION:
Louisiana Civil Code Article 184 provides:
The husband of the mother is presumed to be the father of all children born or conceived during the marriage.
Louisiana Civil Code Article 187 provides, in pertinent part:
The husband can disavow paternity of a child if he proves by a preponderance of the evidence, facts which reasonably indicate that he is not the father ...
Louisiana Civil Code Article 189 provides:
A suit for disavowal of paternity must be filed within one hundred eighty days after the husband learned or should have learned of the birth of the child; but, if the husband for reasons beyond his control is not able to file suit timely, then the time for filing suit shall be suspended during the period of such inability.
At the time of Courtney R. Smith's birth, Lionel E. Smith was the husband of Betty Jean Dison Smith and, as such, was legally presumed to be the father. La.C.C. art. 184. Lionel E. Smith does not dispute that he knew of the child's birth, that the child bore his name and that he was not the biological father. No issues of deceit, fraud or misrepresentation have been alleged. Furthermore, at no time following the birth of Courtney R. Smith did Lionel E. Smith aver impediments or reasons beyond his control which prevented him from bringing a timely disavowal action.
Instead, Smith asserts that prescription did not begin to run until he was placed on notice that paternity (i.e. child support) would be asserted against him. He argues that he was first placed on notice when he was served with a Rule to Establish Child Support filed by Betty Jean Dison on August 2, 1994, less than one hundred and eighty days prior to the filing of his action to disavow paternity. In support of his argument, Smith cites this Court's holding in Succession of Cosse, 608 So.2d 1092 (La.App. 4th Cir.1992), writ denied, 613 So.2d 995 (La. 1993).
In Cosse, we held that the presumptive father had the right to disavow paternity up until his death, and that that right passed to his heirs. Our holding was predicated on an interpretation of former Civil Code Article 191[1] which, in 1933, provided:

*93 In all cases above enumerated, where the presumption of paternity ceases, the father, if he intends to dispute the legitimacy of the child, must do it within one month, if he be in the place where the child is born, or within two months after his return, if he be absent at that time, or within two months of the discovery of the fraud, if the birth of the child was concealed from him, or he shall be barred from making any objection to the legitimacy of such child. (emphasis added)
We concluded that the term "place" in the foregoing article meant "parish" and because the presumed father lived in a different parish than the mother at the time she gave birth, his right of disavowal did not prescribe. Our decision was predicated on the fact that the child did not bear his name and that he was never placed on notice that his paternity would be asserted. Those facts are quite distinguishable from the instant case.
A case more closely akin to the case sub judice is Goodrich v. Goodrich, 421 So.2d 958 (La.App. 3rd Cir.1982). In Goodrich, the presumed child was conceived during the marriage but while the father, who was in the military, was in another country. The child was born on November 6, 1979. In January, 1980, the mother instituted child support proceedings. The presumed father received notice of the child's birth in February, 1980. The father knew the child bore his name and knew that he was not the biological father. A disavowal action was not filed until March, 1981. In reversing the trial court, our brethern of the Third Circuit concluded that these facts were sufficient to provide adequate notice to the presumed father that, in order to deny paternity, it was necessary to file a disavowal action within 180 days of notice of the child's birth. Since he failed to do so, his action was barred.
In the instant case, Lionel E. Smith, Betty Jean Dison Smith and Courtney R. Smith all lived in St. Bernard Parish. Courtney R. Smith has always carried the "Smith" name with the full knowledge of Lionel E. Smith, who knew at all times that he was not the biological father. These facts, similar to those in Goodrich, distinguish the instant case from Cosse and serve to bar Smith from asserting the "notice" issue. The trial court was correct in finding Smith's disavowal action is barred by prescription.
This assignment of error is without merit.

EXCEPTION OF NO RIGHT OF ACTION:
Smith asserts the trial court erred in denying his Exception of No Right of Action to the rule for child support filed by Courtney's mother.
First, we note that the action of the trial court did not serve to determine the merit's of Smith's child support obligation. As such, the judgment is interlocutory and not appealable pursuant to Louisiana Code of Civil Procedure Article 2083. The record shows that no writs were taken. Nevertheless, suffice it to say that the Article 184 presumption does afford a right of action to Betty Jean Dison. The purpose of the peremptory exception of no right of action is to test whether plaintiff has an interest in enforcing the matter asserted or whether plaintiff has the capacity to file the action. In determining whether a plaintiff has a right of action, the court looks at whether plaintiff belongs to a particular class of persons to whom the law grants a remedy for the particular grievance, or whether plaintiff has an interest in judicially enforcing the right asserted. Dufour v. Westlawn Cemeteries, Inc., 94-81 (La.App. 5th Cir. 6/28/94), 639 So.2d 843.
All children born during the existence of a marriage are presumed the legitimate children of the husband. If a timely disavowal action is not brought, the presumption is irrebuttable. La.C.C. Articles 184, 189. Lionel E. Smith is the presumed father of Courtney R. Smith. Since Courtney R. Smith is a minor, Betty Jean Dison Smith has a right to assert a claim for support on behalf of her child.
In conjunction with Lionel Smith's exception of no right of action, however, is his argument that dual paternity, as a creature of the judiciary, is no longer a viable legal principle and, at least in this case, should not be relied on to impose child support obligations on him. In support he relies on *94 various statements from Smith v. Cole, 553 So.2d 847 (La.1989).
We acknowledge that the rights and obligations which evolve from the legal fiction of dual paternity are not well defined and perhaps the whole concept should be reconsidered. However the limited issues posed in the instant case can be decided on existing jurisprudence and do not require a complete review of the inequities, real or perceived, that dual paternity poses. Moreover, that is, perhaps, a legislative function.
Under the present state of the law, this court is bound by the pronouncements of our Supreme Court in Smith v. Cole, supra, where the legal concept of dual paternity was reaffirmed. In that case, the court permitted a child support and paternity action against the biological father, even though the presumptive father no longer had the right to disavow paternity. The court concluded that "[l]egitimate children cannot be bastardized by succeeding proof of actual parentage." Proof of paternity against the biological father will have no effect on the legitimate status of the child, nor can the existence of a presumptive father "provide [the biological father] with a safe harbor from child support obligations." Id. at 854. Although the court did not decide the issue of whether the presumptive father, in all factual contexts, should share support obligations with the biological father, we are satisfied that the existence of a biological father cannot be used as a shield to destroy the child's right of action for support from the presumptive father who fails to timely file a disavowal action. The issue of how much, if any, child support is due from the presumptive father is not before us. However, the court in Smith v. Cole, noted that "[t]he best interest of the child should be considered in determining whether the court in a given case will impose the obligation of support on the person who, by virtue of Article 184, is conclusively presumed to be the father of the child." Id. at footnote 8.

EQUAL PROTECTION:
Louisiana recognizes the right of a biological father to establish paternity (avowal action) to children born during the marriage of the mother to another man irrespective of the article 184 presumption of paternity. Smith v. Jones, 566 So.2d 408 (La.App. 1st Cir.1990) writ denied, 569 So.2d 981 (La. 1990); Finnerty v. Boyett, 469 So.2d 287 (La.App. 2nd Cir.1985); Durr v. Blue, 454 So.2d 315 (La.App. 3rd Cir.1984) writ not considered, 461 So.2d 304 (La.1984). Because article 189 provides for a prescriptive period for disavowal actions and there is no similar period for avowal actions, Smith argues there is a violation of equal protection laws.[2] We disagree.
The basic doctrine of equal protection is to guarantee that all persons in similar circumstances will be treated similarly.
Article 1, Section 3 of the Louisiana Constitution provides:
"No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime."
In Sibley v. Board of Supervisors of Louisiana State University, 477 So.2d 1094, 1107-1108, (La.1985), our Supreme Court provided a succinct analysis of Louisiana's equal protection clause:
"Article I, Section 3 commands the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its *95 enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest. With the adoption of these guarantees Louisiana moved from a position of having no equal protection clause to that of having three provisions going beyond the decisional law construing the Fourteenth Amendment." (emphasis added)
An article 184 presumed father is not in the same circumstances as a biological father. The presumed father is a creature of the legislature, while the biological father's status results from his own actions. The law imposes certain obligations and duties on both. However, being a creature of the legislature, the law grants the presumptive father the right to seek relief from his legal status by permitting a disavowal action within a specified time limit. The state has an underlying social interest in setting a prescriptive period which preserves and maintains a child's legitimate status. No such state interest is present with respect to an avowal action. The disavowal and avowal actions produce different results, are pursued by individuals in different circumstances and for different reasons. There is no equal protection violation by placing a time limitation on the disavowal, but not the avowal action.
For the reasons assigned, the judgment of the trial court is affirmed.
AFFIRMED.
WALTZER, Judge, concurs with written reasons.
I respectfully concur with the majority and find as they do, that Betty Dison Smith has a right of action against Lionel E. Smith, the "legal" father of the minor child, Courtney. I also agree that appellant's disavowal action has prescribed. However, I am struck by the record facts.
The record discloses that it was Lionel E. Smith who filed the petition for divorce in 1985. It was he who alleged that he had not lived with his wife since 15 June 1976, and that no reconciliation had taken place. Most significantly, it was Lionel E. Smith who alleged that the child Courtney was born 27 November 1980 (over four years after the separation), and petitioned the court that custody, care and control of the child be awarded to Betty Dison Smith, his wife. The ultimate judgment of divorce (by confirmed default) was granted to Lionel Smith; the custody of the child to his wife. At the time he filed his petition, Lionel Smith knew that Eddie Miller was the biological father of the child. He chose not to disavow paternity.
Although Betty Smith requested at the time of Courtney's birth that Eddie Miller, the biological father, be permitted to sign the birth certificate of the child and acknowledge paternity, Lionel Smith would not agree to this offer and signed the birth certificate, thereby legitimating the child. Lionel Smith had legal counsel and for his own reasons did not disavow paternity.
Now Lionel Smith claims that he was "deceived", because Betty Smith assured him that she would never request that he support Eddie Miller's biological child. Smith further claims that he had reason to rely on that promise, because no one made demand for child support until the child reached the age of 13.
Lionel Smith admitted that he knew all along that he was not the biological father; Eddie Miller admitted that he fathered the child and lived with the child's mother for years. Miller testified that he held the child out as his own and supported the child (without court order) until 6-7 months before these proceedings were instituted in the lower court. Eddie Miller testified that because his truck broke down, he stopped supporting his biological child. Betty Smith in answers to request for admissions acknowledged the biological paternity of Eddie Miller. Obviously, when Betty Smith could no longer get support from Eddie Miller, she proceeded against Lionel Smith.
In Smith v. Cole, 553 So.2d 847 (La.1989), our Supreme Court validated the concept of "dual paternity". The Court held biological relationship and dependency to be determinative *96 of the child's rights, disregarding the classification into which the child is placed by statutory law. In Cole a demand for support was made from the biological father, not from the presumptive legal father. The Supreme Court allowed a criminal non-support action against a biological father holding that the mother could maintain a child support action against the biological father despite the presumption of her child's legitimacy. The Supreme Court held that the biological father may not escape responsibility just because another shares it.
In Cole the question whether the "legal" father shares the support obligation was not before the court. The court declined to hold that the legal father will, in all factual contexts, be made to share the support obligations of the biological father and mother.
The Supreme Court stated in Cole, at page 855, footnote 8, that "the best interest of the child should be considered in determining whether the court in a given case will impose the obligation to support on the person who, by virtue of Article 184, is conclusively presumed to be the father of the child". The Supreme Court noted that "while L.S.A.-C.C. art. 227 may provide the basis for such an imposition on the legal father, the fact that there is a biological father capable of providing support cannot equitably be ignored." (emphasis supplied).
While we are bound by our civilian tradition, and we are mandated to protect the Civil Code from foreign and non-civilian influences, there is an inequity here that can be minimized only by the "legal" father's forfeiture of his unequivocal right to timely disavow the child's paternity.
NOTES
[1] This article was repealed by Acts 1976, No. 430, Section 2. The time limitation of Article 189, quoted supra, provides for a more realistic starting point, i.e. "learned or should have learned of the birth of the child."
[2] Although there is no statutory prescriptive period for avowal action, our jurisprudence has recognized that the "biological father, who knows or has reason to know of the existence of his biological child and who fails to assert his right for a significant period of time, cannot later come forward and assert paternity." Smith v. Jones, supra at 414.