JjSCHOTT, Chief Judge.
This is a case in which the defendant, who is not the biological father of the child, was condemned to pay for the child’s support. The principal issue is whether he was somehow exempt from bringing a timely action to disavow his paternity of the child and thereby avoid his support obligation. We affirm.
Plaintiff and defendant were married in 1978 and had their first child, Sherlinda, during the marriage. In July 1990 plaintiff filed suit for divorce and obtained a judgment of divorce on June 26,1992, based upon voluntary separation since 1986. Supporting the judgment were affidavits of both parties executed in June 1992 attesting to the facts of their marriage, Sherlinda’s birth, the separation, mutual fault and joint custody of Sherlinda. Additionally, plaintiffs affidavit states that she “has recently given birth to a baby, whose biological father is Chris Martin while [defendant] was away, and who she had neither seen or had sexual relationship with in over three years....” In his affidavit defendant states that plaintiff “has recently given birth to a baby, who I am not the biological father, not having sexual relationship with her in over three years.... ”
ROn July 5, 1994, plaintiff filed a petition for child support alleging that two children were born of the marriage, Sherlinda and Christina. Plaintiff stated: “Defendant is the legal father, but not the biological father of Christina.” It appears that this petition was served on defendant on May 28, 1995, and proceeded to trial on June 14.
Defendant appeared in proper person. The trial judge asked if he decided to represent himself and he replied that he was not able to get an attorney “but I don’t have a problem representing myself.” After plaintiff testified, her counsel called defendant for cross examination. At this point he mildly protested that he had no lawyer, the judge told him he had waived his right to counsel, and he stated there was “one question that [he] was not aware of.” He went on to say that he had no problem being made to support Shelinda, but he was not aware of the other child because he had been in jail in Florida for over five years and was never allowed to come home. He testified that he didn’t know the second child, he was in jail from 1988 and did not come home until February 1993 except for his mother’s funeral in 1992. However, he admitted that his wife told him she was pregnant when he was in jail at the time she took the divorce in June 1992 and that he had a lawyer representing him at the time, but he failed to tell the lawyer about this. At that point in the trial the judge made the following comments:
Let me tell what you just did. What you just did by ignoring the information that was provided to you, while you were in jail in 1992, under the law, sir, you’re deemed the father of Christine. Listen to me. You have only six months to file a pétition to disavow paternity. We are years after the fact. And you were put on notice at the time she was pregnant. And since the child has been bom, you have not taken any action.
By his first assignment of error defendant argues that the trial judge abused her discretion when she denied his motion for a continuance. As shown Rabove, the defendant did not make a timely motion for a continuance. On the contrary, he willingly proceeded to trial without a lawyer and only after the trial was well under way did he raise any question about his lack of counsel. Even then he did not object to proceeding or move for a continuance.
By his second assignment of error he argues that plaintiff’s case was flawed by her failure to establish the date of Christina’s birth. In her affidavit filed in support of her petition for a divorce and dated June 11, 1992, she said she had recently given birth to Christina. Her other daughter, Sherlinda, said Christina was bom in 1992. As discussed below, the exact date of the birth is irrelevant in the context of the facts of this case.
*1077 By his third assignment of error defendant argues that there was no necessity for him to file an action to disavow Christina’s paternity because there was no presumption of his paternity and no burden of proof required of him. In order to address his argument we must examine articles 184-192 of the Louisiana Civil Code as revised by Act 430 of 1976.
Art. 184 provides that the husband of the mother is presumed to be the father of the children bom or conceived during the marriage. Art. 185 provides that a child bom less than three hundred days after the dissolution of the marriage is presumed to have been conceived during the marriage. On the other hand, art. 186 provides that the husband of the mother is not presumed to be the father of the child if another man is presumed to be the father. Defendant argues that he is entitled to this presumption because plaintiff judicially confessed and acknowledged that one Chris Martin was Christina’s father and that defendant was not. He would, thus, have us conclude that it was unnecessary for him to bring an action to disavow paternity where he enjoys the presumption against paternity.
Article 187 provides that the husband “can disavow paternity if he proves |4by a preponderance of the evidence, facts which reasonably indicate that he is not the father.” Article 189 provides that a suit for disavowal of paternity must be filed within one hundred eighty days after the husband learned or should have learned of the birth of the child. Article 187 provided defendant with a remedy for avoiding any responsibility toward Christina, namely an action to disavow her paternity. The previous articles which speak of the presumptions pertain to the burden of proof in the disavowal proceedings. While art. 186 might have provided defendant with a presumption in the event he filed a timely action to disavow, it did not dispense or exempt him from filing such an action should he wish to avoid the responsibilities attending paternity.
Defendant learned about Christina’s birth in June 1992 and this triggered the six month prescriptive period of article 189 which was available to him to file a suit for disavowal of paternity. He took no action at all until he appeared in court in June 1995 to contest the petition for Christina’s support. Because he failed to bring a timely action for disavowal of paternity, he had no legal basis to oppose the petition.
Our conclusion is consistent with this court’s opinion in Smith v. Bison, 662 So.2d 90 (La.App. 4 Cir.1995). Even though in that case the legal father was listed on the birth certificate as the father whereas there is no evidence concerning the birth certificate in the present case, there was no question in that ease but that the legal father knew of the child’s birth; he knew Eddie Miller was the biological father and had provided support for the child and the legal father never provided support. Nevertheless, we held that the legal father’s action for disavowal had prescribed and the mother had a right to assert a claim for child support against him.
Accordingly, the judgment appealed from is affirmed.
AFFIRMED.