1,GASKINS. J.
One of the defendants in this case, Steven Mark Smith, appeals the trial court’s ruling that his action for disavowal of paternity has prescribed. For the following reasons, we affirm.
FACTS
In 1984, Vicky Lynn Modisette and Steven Mark Smith were married. In February 1987, they separated and never reconciled. In January 1988, Ms. Modisette filed a petition for divorce, and on March 8, 1988, a judgment of divorce was granted. At the time of the divorce, the couple had no children. On June 30, 1988, Ms. Modisette gave birth to James Troy Smith. During the time in which the child was conceived, Ms. Modisette lived with Kenneth Ray Phillips. He is the biological father of the child.
On April 16, 1997, Ms. Modisette filed a petition to declare Mr. Smith not to be the father of her child. In addition, Ms. Modi-sette sought to have Mr. Phillips declared the father of James Troy Smith. She also requested that the child’s last name be changed to Phillips and she sought child support from Mr. Phillips. In the alternative, she requested child support from Mr. Smith. A curator ad hoc was appointed to represent the interests of the child. On May 11,1997, Mr. Smith filed an answer to the petition and a reconventional demand in which he sought to disavow the child. In July 1997, the curator representing the child filed an exception of prescription and peremption regarding Mr. Smith’s disavowal action and an exception of no cause or right of action concerning Ms. Modi-sette’s attempt to have Mr. Smith declared not to be the father of the child.
Also, in July 1997, the parties were ordered to submit to blood tests. These tests found that Mr. Smith was not the father of James and that there was a 99.96% probability that Mr. Phillips was the child’s father. In September 1997, the parties [¡¡.consented to changing the child’s last name from Smith to Phillips, and the trial court ordered that a new birth certificate be prepared to reflect the change.
On May 12, 1998, a hearing was held on the exceptions and on the request for child support. The trial court received exhibits from the parties and heard testimony from witnesses. Submitted as exhibits were the petition for divorce, the judgment granting the divorce, the judgment changing the child’s name to Phillips, and the blood test results.
Mr. Smith testified that he did not have sexual relations with Ms. Modisette follow *985 ing their separation and that he did not learn of his former wife having a child until a year or two after the birth. He stated that no demand was ever asserted against him for child support, as the minor’s father, until he was served with the present petition in 1997. He also stated that Ms. Modisette always told him that he was not the father of the child.
Ms. Modisette acknowledged that she always told Mr. Smith and others that Mr. Phillips was the father of her child, not Mr. Smith. She stated Mr. Phillips was the only person she had sexual relations with during the period when the child was conceived. Prior to the present proceeding, she had never requested child support from Mr. Smith.
Ms. Modisette stated that when her child was six or seven months old, Rachel Reeves, her roommate at the time, told Mr. Smith about the child. Ms. Modisette also said that in 1993, when James was about to start kindergarten, she asked Mr. Smith to sign a waiver so that she could have James’ birth certificate changed to reflect that Mr. Phillips was his father. At this time, she informed Mr. Smith that the child was not his and of the child’s date of birth.
Rachel Reeves also testified at the hearing. She stated that she was living with Ms. Modisette when the child was about six months old. When Rachel | ¡¡moved out of the house, Mr. Smith helped her, and she thought she told him about the child at this time. However, she was not sure of whether she told him or not.
Following the testimony, the trial court sustained the exceptions filed by the curator. The court further ruled that Mr. Smith is the legal father of the child, while Mr. Phillips is the biological father of the child. The court found that Mr. Smith waived his right to disavow the child because he did not file the action within 180 days of learning of the child’s birth, as required by La. C.C. art. 189. As for child support, Ms. Modisette and Mr. Phillips reached an agreement as to the monthly amount he is to pay, and Mr. Smith was not ordered to pay support. Mr. Smith appealed the trial court judgment.
DISCUSSION
Mr. Smith argues that the trial court erred in dismissing his reconventional demand for disavowal of paternity by maintaining the exceptions of prescription and peremption filed on behalf of the child by the curator. This argument is without merit.
The husband of the mother is presumed to be the father of all children born or conceived during the marriage. La. C.C. art. 184. A child born less than 300 days after the dissolution of the marriage is presumed to have been conceived during the marriage. La. C.C. art. 185. A suit for disavowal of paternity must be filed within 180 days after the husband learned or should have learned of the birth of the child. However, if the husband for reasons beyond his control is not able to file suit timely, then the time for filing such suit shall be suspended during the period of such inability. La. C.C. art. 189.
Because James was born only three months after the divorce of Mr. Smith and Ms. Modisette, Mr. Smith is presumed to be James’ father, under La. C.C. art. 185. Mr. Smith admitted he learned of the child’s birth either one or two years after the event. Therefore, his 180-day period for disavowing the child started |4running at this point, and the period expired long before he filed his action to disavow in 1997. The defendant’s action to disavow was filed some nine years after the child’s birth and at least seven or eight years after the defendant learned of the birth of the child. Thus, unless Mr. Smith can show that the time limit should not have started running when he learned of the birth, his action was untimely.
Mr. Smith argues that the term “birth of the child” contained in La. C.C. art. 189 should be interpreted to mean the birth of the child, accompanied by circumstances *986 which place a presumptive father on notice that a claim of paternity and for child support will be directed at him. He cites the case of Naquin v. Naquin, 374 So.2d 148 (La.App. 1st Cir.1979), in support of this argument. In that case, the court found that the term “birth of the child” as used in La. C.C. art. 189 referred to learning of the birth under circumstances that would point to the possibility of an assertion of the husband’s paternity. In Na-quin, the presumed father’s disavowal action was filed more than three years after the child’s birth and more than a year after the father learned of the child’s existence. However, the court found that because of the former wife’s misrepresentation that the child was the product of a second marriage (she had not remarried), the disavowal action could not be filed prior to the presumed father being put on notice that her statements were not true. The disavowal action was filed shortly after the presumed father learned that his former wife had not remarried, and blood tests showed that he was not the father of her child. Naquin v. Naquin, supra.
Mr. Smith also cites Williams v. Williams, 587 So.2d 112 (La.App. 2d Cir. 1991), where this court noted that cases interpreting La. C.C. art. 189 had allowed the suspension of the 180-day period only in situations where the husband does not have notice of either (1) the child’s birth or (2) circumstances apprising him of a possible paternity claim. Also, this court noted that the codal articles governing factions to disavow paternity have been given strictly construed. Williams v. Williams, supra.
The facts in the present case are distinguishable from those in Naquin v. Naquin, supra. In that case, the former wife’s misrepresentation led the presumed father to believe that she had remarried and that her new husband was the presumed father of the child. In the present case, Mr. Smith learned of the existence of the child one or two years after its birth. While he claimed he did not know the child’s birth date at that time, he knew that his former wife had a young child which must have been born prior to their divorce or shortly thereafter. Therefore, Mr. Smith had sufficient information to apprise him of a possible paternity claim and the need to timely file an action to disavow the child. Therefore, he cannot claim, as did the presumed father in Na-quin, that any misrepresentations made by his former wife prevented him from knowing of a possible paternity claim against him regarding this child.
We also find that Williams v. Williams, supra, does not support Mr. Smith’s argument. In Williams, the wife’s former husband received blood test results showing that he was not the biological father of the child in question. However, he then waited ten months to file an action to disavow the child. This court found that the action had prescribed.
The rulings in the following cases appear applicable to the present situation. In Goodrich v. Goodrich, 421 So.2d 958 (La.App. 3rd Cir.1982), the child was conceived and born during the marriage, and the husband knew of the birth, that the child had his name, and that he was not the biological father, more than a year before filing a disavowal action. The court found that upon notice of the child’s birth, it is incumbent on the husband to file the disavowal proceeding within 180 days. The court stated that since the parties were married when the child was born Land the husband was notified of the birth during the marriage, this was enough for prescription to start running. Goodrich v. Goodrich, supra.
In Smith v. Dison, 95-0198 (La.App. 4th Cir. 9/28/95), 662 So.2d 90, the couple was separated but still married when the child was born. The husband knew of the birth, that the child had his name, and that he was not the biological father. The husband asserted that prescription did not begin to run until he was placed on notice that paternity (child support) would be asserted against him. However, citing Goodrich v. Goodrich, supra, the court *987 found the action was prescribed because the action should have been filed within 180 days of notice of the child’s birth. There were no issues of deceit, fraud, or misrepresentation in this case. Smith v. Dison, supra.
In Smith v. Smith, 95-2291 (La.App. 4th Cir. 4/3/96), 672 So.2d 1075, the parties separated in 1986, and prior to their divorce in June 1992, a child was born. The husband was not the father, and during the divorce proceeding, both parties submitted affidavits stating he was not the father. The husband was sued for child support in July 1994, and he asserted a disavowal action in June 1995. The court found that the 180-day period of La. C.C. art. 189 started running when the husband found out about the birth of the child during the divorce proceeding in 1992, and as he failed to bring a timely action for disavowal, he had no basis to oppose the support petition. Smith v. Smith, supra.
While the present situation differs from the above cases in that Mr. Smith was not married to Ms. Modisette when the child was born, because the child was born within 800 days of the divorce, he was still the presumed father under La. C.C. art. 185. He then learned of the child’s existence several years before he filed the disavowal action. Under these circumstances, his learning of the child’s existence was sufficient to start the running of the 180-day period in La. C.C. art. 189. Since he has not shown that he was prevented from filing the action for treasons beyond his control, the action for disavowal was not timely, and he waived his right to disavow the child.
Mr. Smith further argues that he should be allowed to disavow the child because the presumption created by La. R.S. 9:397.3 triggers La. C.C. art. 186, so that he would no longer be the presumed father of the child. La. R.S. 9:397.3(B)(2)(b) states a certified report of a blood test which indicates by a 99.9% probability that the alleged father is the father of the child creates a rebuttable presumption of paternity. La. C.C. art. 186 states the husband of the mother is not presumed to be the father of the child if another man is presumed to be the father.
Mr. Smith’s argument is without merit. The legal tie of paternity will not be affected by subsequent proof of the child’s actual biological tie. Smith v. Cole, 553 So.2d 847 (La.1989). As stated in Smith v. Smith, supra, while La. C.C. art. 186 might have provided the defendant with a presumption in the event he filed a timely action to disavow, it did not dispense with or exempt him from filing such an action, should he wish to avoid the responsibilities attending paternity. If the presumed father fails to bring a timely disavowal action, disavowal is barred by prescription, and the presumption of paternity is irrebuttable. State v. Walker, 97-0330 (La.10/21/97), 700 So.2d 496. In the case sub judice, Mr. Smith failed to file a timely disavowal action and he is, therefore, the legal father of the child. Furthermore, the fact that Mr. Phillips has been proven to be the child’s biological father does not affect Mr. Smith’s status.
CONCLUSION
For the reasons set forth above, the judgment of the trial court is hereby affirmed, at Mr. Smith’s costs.
AFFIRMED.