70 So.3d 1011 (2011)
STATE of Louisiana, DEPARTMENT OF SOCIAL SERVICES, OFFICE OF FAMILY SUPPORT in the Interest of K.B.D., minor child of Lasheka Marie Drew, Plaintiffs-Appellees
v.
Marion Thomas DREW, Jr., Defendant-Appellant.
No. 46,337-CA.
Court of Appeal of Louisiana, Second Circuit.
June 29, 2011.
Pamela Anita Blankenship, for Appellant.
Eugene W. Bryson, III, Assistant District Attorney, for Appellee, State of Louisiana DOSS.
Kelly Lorraine Long, for Appellee, K.B.D. (Minor).
Lasheka Marie Drew, In Proper Person, Appellee.
Before BROWN, STEWART, and GASKINS, JJ.
BROWN, Chief Judge.
K.D. was born on June 14, 2004. In 2008, Lasheka Drew, the mother of the child, applied for and accepted public assistance from Medicaid. On April 18, 2008, the State of Louisiana, Department of Social *1012 Services, Offices of Family Support ("the State"), filed a rule against Marion Thomas Drew, Jr., to establish support on behalf of the minor child.[1] When Lasheka gave birth to the child, she was married to Drew. La. C.C. art. 185 provides that the husband of the mother is presumed to be the father of a child born during the marriage or within 300 days from the date of the termination of the marriage. Marion and Lasheka were divorced on November 7, 2007. Thus, paternity was established by operation of law. On June 6, 2008, Drew was ordered to pay support for the child in the amount of $489.30 monthly to the Department of Social Services. At this time Drew requested DNA testing. The test results showed that Drew was not the biological father of the child.
On July 15, 2009, Drew filed a petition to annul his acknowledgment of paternity and for damages (from Lasheka Drew), and on October 27, 2009, he filed an amended petition to disavow paternity. These actions were filed under the same suit number as the petition by the Department of Social Services. On January 13, 2010, the court appointed Attorney Kelly Long to represent the minor child. On July 7, 2010, the court heard testimony and arguments. The court entered judgment against Drew finding that his action to disavow had prescribed. As to the initial action to annul the acknowledgment of paternity, the court noted that only a birth certificate was introduced into evidence and because the child was legitimate there was no necessity for an authenticated act of acknowledgment, none of which was shown.

Facts
In the summer of 2003, Marion Drew, Jr., and Lasheka Drew began a relationship. After Lasheka became pregnant, she and Marion married on December 13, 2003. Six months later, on June 14, 2004, K.D. was born; Marion signed the certificate of live birth as the father of the child. Over three years later, on November 7, 2007, Marion and Lasheka Drew were divorced. The petition for divorce was filed by Marion and in it he alleged that one child was born of the marriage, namely K.D. Nothing was said concerning custody or support. The record shows that the child lived with his mother.
At the hearing to disavow paternity, Drew testified that he did not question his biological relationship with the child until the child support rule was filed in April 2008. At that time, Drew testified that he began to hear that Lasheka may have been sleeping with other men and that K.D. was not his child. Lasheka testified that she genuinely believed Marion was K.D.'s biological father. She testified that she had "protected" sexual contact around the time of conception with a former boyfriend. Lasheka also testified that during the time of conception she had "unprotected" sexual relations with Drew. They both testified that K.D.'s conception was a major factor in their decision to get married.

Discussion
The husband of the mother is presumed to be the father of a child born during the marriage or within three hundred days from the date of the termination of the marriage. La. C.C. art. 185. (Emphasis added). The husband may disavow *1013 paternity of the child by clear and convincing evidence that he is not the father. The testimony of the husband shall be corroborated by other evidence. La. C.C. art. 187. The time limit for a disavowal by the husband can be found in La. C.C. art. 189, which provides that the action for disavowal of paternity is subject to the liberative prescription of one year. This prescription commences to run from the day the husband learns or should have learned of the birth of the child. (Emphasis added).
Marion and Lasheka were married on December 13, 2003. The minor child, K.D., was born during that marriage on June 14, 2004. The parties were divorced on November 7, 2007.[2] Since Marion was the husband of K.D.'s mother, Lasheka Drew, when K.D. was born, Marion is clearly the presumed father. The only way to disestablish paternity when paternity is presumed is through the disavowal action.
In the past, it was difficult to prove by clear and convincing evidence that the husband was not the father. Today, it is easily shown through DNA testing. Drew has shown by clear and convincing evidence through his testimony, Lasheka Drew's testimony, and the DNA evidence, that he is not K.D.'s biological father. The record shows that Drew was at the hospital when K.D. was born. He signed K.D.'s certificate of live birth and is listed as his father. Therefore, Drew knew of K.D.'s birth when he was born on June 14, 2004. Over three years after K.D.'s birth, well past the one-year prescriptive period, Marion and Lasheka Drew divorced. Marion Drew never during that time instituted an action to disavow paternity; however, the record shows that he never believed that K.D. was not his child. Only when the state filed a rule for child support in April 2008, did Marion begin to question his biological relationship to the minor child. Marion asked for DNA testing when he agreed to an order for payment of support on June 6, 2008. The petition to annul acknowledgment of paternity and amended petition to disavow paternity were not filed until July 15, 2009, and October 27, 2009, respectively, each over four years after K.D.'s birth and more than one year after Drew first questioned filiation. We note that the DNA test results were rendered on October 31, 2008, and thereafter mailed to both Lasheka and Drew.
In Modisette v. Phillips, 31,905 (La. App.2d Cir.05/05/99), 736 So.2d 983, 987, this court said:
The legal tie of paternity will not be affected by subsequent proof of the child's actual biological tie ... If the presumed father fails to bring a timely disavowal action, disavowal is barred by prescription, and the presumption of paternity is irrebuttable. In the case sub judice, Mr. Smith failed to file a timely disavowal action and he is, therefore, the legal father of the child. Furthermore, the fact that (another man) has been proven to be the child's biological father does not affect Mr. Smith's status. (Citations omitted).
Modisette was decided in 1999. A complete revision of the law concerning filiation was enacted in 2005. The Chair and Reporter of the Persons committee of the La. Law Institute, LSU Law School Professor Katherine Shaw Spaht, commenting on the revision in 2005 and 2006 of articles governing proof of filiation wrote:

*1014 ... [o]ne clearly stated objective of the revision of the law of filiation: to more closely align biological and legal paternity. Yet, the series of articles devoted to the mother's contestation action recognizes that this alignment must pose the least possibility of potential harm to the child and the family. The objective of aligning biological and legal paternity principally reflects dissatisfaction with the historical application of the presumption that the husband of the mother is the father of the child conceived or born during marriage. The presumption had become virtually irrebuttable. Even before the Law Institute revision passed in 2005, legislative changes to the time period for instituting a disavowal action markedly liberalized the rebuttal of the presumption of the husband's paternity. The liberalizing legislative change that suspended the time period if the child was born more than three hundred days after a continuous physical separation of the mother and her husband was incorporated into the Law Institute's revision. In addition, the revision took an additional liberalizing step by converting what was arguably a peremptive time period for instituting the action into an explicitly prescriptive period, subject to both suspension and interruption. Thus, the potential for more closely aligning legal and biological paternity exists by virtue of the continued liberalization of the rules regulating the disavowal action by the husband and, for the first time, extending an action of contestation to the mother of the child. (Emphasis added).

Who's Your Momma, Who Are Your Daddies? Louisiana's New Law of Affiliation, 67 La. Law Rev. 307 at 314 (2007).
The comments to La. C.C art. 189 also state that the time period is prescriptive subject as a general rule to both suspension and interruption. This raises the question of the discovery rule of the equitable doctrine of contra non valentem. Article 189 provides that a disavowal action must be filed within one year after the husband learned or should have learned of the birth of the child. In the present case, the husband clearly knew when the child was born. He believed at birth that the child was his biological child. Almost four years later he received information to question that belief. Thereafter, DNA test results proved that there was zero probability that he was the father.
Drew cites La. R.S. 9:392(A)(7)(b), which states that acknowledgment of paternity may be voided only upon proof, by clear and convincing evidence, that such act was induced by fraud, duress, material mistake of fact or error, or that the alleged father... is not the biological father. The acknowledgment referred to in this article involves an authentic act of acknowledgment and not the signing of a birth certificate. The trial court correctly found that there was no authentic act of acknowledgment shown.
Drew further relies upon Faucheux v. Faucheux, 00-20 (La.App. 5th Cir.10/31/00), 772 So.2d 237. However, in Faucheux, the child was born before the parties were married, and the acknowledgment was after marriage and by authentic act. Faucheux is clearly distinguishable from the present case. Drew was the husband of K.D.'s mother when K.D. was born. Therefore, he is the presumed father, and as a result, there was never a need for an acknowledgment. A certificate of live birth, however, is only a record of birth. It is not an acknowledgment; an acknowledgment is a separate act with its own specific requirements, see La. R.S. 9:392, or it is a subsequent signing of a *1015 birth certificate acknowledging paternity of a child born illegitimately, see La. C.C. art. 196. An acknowledgment is used when a man marries a woman who has already given birth to an illegitimate child prior to the marriage for the purpose of legitimating that child. Id. Since there was no acknowledgment and Drew is the presumed father, the prescriptive period for null acknowledgments does not apply.
The Louisiana legislature has decided through La. C.C. art. 189 that prescription runs from the date the presumed father learned of or should have learned of the "birth" of the child. The statute is clear and unambiguous.
In Gallo v. Gallo, 03-0794 (La.12/03/03), 861 So.2d 168, 173-74, the Louisiana Supreme Court elaborated on the purpose of the presumption of paternity and the applicable time period for bringing the action found in La. C.C. arts. 185, 187, and 189. The Louisiana Supreme Court stated:
The policy embodied in the restrictive provisions of the Louisiana Civil Code dealing with the action to disavow is to protect innocent children, born during marriage, against scandalous attacks upon their paternity by the husband of the mother, who may be seeking to avoid paternal obligations to the child. Thus, the traditional and historical position of Louisiana jurisprudence was to zealously guard and enforce the presumption created by Article 18[5]. The fundamental ends achieved by such court action were preservation of the family unit, avoidance of the stigma of illegitimacy, and aversion to the disinheritance that resulted from a successful disavowal action. There is a public interest in dispelling doubts as to legitimacy which demands the establishment of a relatively short time for bringing challenges. (Citations omitted).
Further evidence of the legislature's continued intent to protect children over the husband's interest is the repeal of La. R.S. 9:305. Former La. R.S. 9:305(1) provided:
Notwithstanding the provisions of Civil Code Art. 189 and for the sole purpose of determining the proper payor in child support cases, if the husband, or the legal father who is presumed to be the father of the child, erroneously believed, because of misrepresentation, fraud, or deception by the mother, that he was the father of the child, then the time for filing suit for disavowal of paternity shall be suspended during the period of such erroneous belief or for ten years, whichever ends first.
Fontenot v. Fontenot, 00-1057 (La.App. 3d Cir.12/06/00), 774 So.2d 330. La. R.S. 9:305(1) was repealed by the legislature by Acts 2006, No. 344, § 7, effective June 13, 2006.
Under former La. R.S. 9:305(1), if Marion Drew could prove misrepresentation, fraud, or deception, prescription would have been suspended during the time that he did not know K.D. was not his child. However, it is clear that the legislature had conceived of situations such as Drew's, and the legislature repealed the statute. Further, as ruled by the trial court, we agree that the evidence did not support a finding of misrepresentation, fraud or deception.

Conclusion
For the foregoing reasons, the judgment of the trial court granting the exception of prescription concerning the disavowal action is affirmed. Costs are assessed to appellant, Marion Thomas Drew, Jr.
STEWART, J., concurs with reasons.
*1016 STEWART, J., concurs.
In July or August of 2003, the appellant and Lasheka Drew began dating. The appellant testified that he believed that they were committed to one another and that no one else was involved in their relationship at that time. Lasheka never informed the appellant that she was still involved in a sexual relationship with her ex-boyfriend, William Cartwright. She never informed the appellant that there existed a possibility that the baby could have been fathered by another man. Based on the record, Lasheka believed the appellant to be the biological father because "she had protected sex" with her ex-boyfriend and had "unprotected sex" with the appellant within the same course of time.
In September or October of 2003, Lasheka discovered that she was pregnant. For this reason, the appellant married Lasheka in December of 2003. The appellant attended prenatal appointments and was present at the birth of the child. Six months later, on June 14, 2004, the minor child was born. On November 7, 2007, the appellant and Lasheka were divorced. In April of 2008, Lasheka petitioned the court for child support. At the request of the appellant, a DNA test was performed. The results showed that the appellant was not the biological father of the minor child. Lasheka now admits that the ex-boyfriend is the child's biological father. Based on the record, she has no idea where William Cartwright is.
The relevant section of Louisiana Civil Code article 189 states, "The action for disavowal of paternity is subject to a liberative prescription of one year. This prescription commences to run from the day the husband learns or should have learned of the birth of the child." Referred to as one of the strongest presumptions known in law, the husband of the mother is presumed to be the father of a child born during the marriage or within three hundred days from the date of the termination of the marriage. La. C.C. art. 185.
Here, the appellant was the husband of the mother and is presumed to be father of the minor child, who was born during the marriage. Therefore, prescription would have commenced from the birth of the child, namely on June 14, 2005. Under our law, the appellant is now barred from filing an action for disavowal of paternity and is presumed to be the putative or legal father. Thus, the appellant must pay child support for a non-biological child until his 18th birthday.
This existing anomaly unfairly forces a putative father to support a non-biological child, while the biological father escapes financial responsibility. In commenting on this injustice, Louisiana scholar Robert Pascal stated,
"We must shut our eyes to the obvious immorality of life in our times to such an extent as both to impose injustly on a man the status and obligations of legitimate paternity, with all they imply in terms of support and succession, and to add insult to injury by stamping him officially with the mark of the cuckold. This cannot but produce a feeling of contempt for both legislation and the administration of justice." Rachel L. Kovach, Comment, Sorry DaddyYour Time Is Up: Rebutting the Presumption of Paternity in Louisiana, 56 Loy. L.Rev. 651, 653 (2010).
Louisiana Civil Code article 3467 provides that prescription runs against all persons unless exception is established by legislation. In addition, Louisiana has recognized the ancient civilian, equitable doctrine of contra non valentem agere nulla currit praescriptio (contra non valentem), to prevent the running of liberative prescription *1017 in certain cases. The doctrine of contra non valentem stands for the proposition that prescription does not run against those who cannot act. Louisiana jurisprudence establishes that contra non valentem applies to prevent the running of liberative prescription: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiffs action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. Corsey v. State ex rel. Dep't of Corrections, 375 So.2d 1319, 1321-22 (La. 1979).
Contra non valentem should be applied in matters like this one, where the mother withheld information that would have led the appellant to believe he was the biological father of the child and thereby prevented him from availing himself of the disavowal action. Alternatively, in light of the reliable and common use of DNA testing to determine paternity, we can urge the legislature to consider whether to extend the prescriptive period to when the putative father learns or has reason to suspect that he is not the biological father. For these reasons, I respectfully concur.
NOTES
[1] Recipients of AFDC under Title IV-D of the Social Security Act assign their child support rights to the state and are required to cooperate (unless good cause for refusing to do so is determined to exist) in whatever legal action the state undertakes. By assigning their child support rights in return for AFDC aid, they give the states the opportunity to recoup the financial drain imposed by the welfare system on the state and federal treasuries. 42 U.S.C. §§ 651 and 608.
[2] The parties lived together for more than a year after the child was born and then separated.